# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

FILED
U.S. DISTRICT COURT

2001 MAR 30 P 4 33

| | |
|---|---|
| TOMASZ MARZEC,       * | |
|          * | |
|       Plaintiff,      * | |
|          * | |
| v.          * | |
|          * | |
| DAVID TOULSON, in his individual   * | |
| capacity and official capacity as   * | |
| a law enforcement officer with the   * | |
| Medical College of Georgia Police   * | |
| Department; JOSEPH MORBIT, in his   * | |
| individual capacity and official   * | |
| capacity as a law enforcement   * | |
| officer with the Medical College   * | |
| of Georgia Police Department;   * | CIVIL ACTION NO. |
| MITCHELL JONES, in his individual   * | CV 103-185 |
| capacity and official capacity as   * | |
| a law enforcement officer with the   * | |
| Medical College of Georgia Police   * | |
| Department; DAVID ARCHER, in his   * | |
| individual capacity and official   * | |
| capacity as a law enforcement   * | |
| officer with the Medical College   * | |
| of Georgia Police Department; DR.   * | |
| STEPHEN PEIPER, in his individual   * | |
| capacity and official capacity as   * | |
| an Administrator at the Medical   * | |
| College of Georgia; MEDICAL   * | |
| COLLEGE OF GEORGIA POLICE   * | |
| DEPARTMENT; and MEDICAL COLLEGE   * | |
| OF GEORGIA,   * | |
|          * | |
|       Defendants.      * | |

## O R D E R

Plaintiff, Tomasz Marzec, filed the above action against

Defendants, David Toulson, Joseph Morbit, Mitchell Jones,

David Archer, Stephen Peiper, Medical College of Georgia

Police Department ("College Police"), and Medical College of Georgia ("Medical College") for alleged violation of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and various state laws. Presently before the Court is Defendants' motion for summary judgment. For reasons more fully stated below, Defendants' motion will be **GRANTED IN PART and DENIED IN PART.**

## BACKGROUND

On July 1, 2001, Plaintiff, Dr. Tomasz Marzec, was hired by the Medical College as an assistant professor in its pathology department on a renewable one year employment contract. Plaintiff's contract, renewed for a second year in 2002, was set to expire on July 30, 2003.

Plaintiff testified that as late as October 2002 Dr. Stephen Peiper, the chairman of the pathology department, had provided Plaintiff with assurances that he was needed in the department. During that period of time, Plaintiff was having issues with Dr. Richard Hessler, Plaintiff's immediate supervisor.

Prior to February 7, 2003, Plaintiff received two letters addressing the manner in which he interacted with his

2

coworkers. In July 2002, Plaintiff received a letter regarding appropriate professional interaction and the need to abstain from invading his coworker's personal space.

On January 17, 2003, Plaintiff received a letter of reprimand for alleged inappropriate professional behavior. On January 23, 2003, Plaintiff wrote a letter to the program director and, on January 24, 2003, one to Dr. Stephen Peiper, the chairman of the pathology department, regarding the letter of reprimand and requesting an investigation of the allegations contained therein. On January 30, 2003, Plaintiff filed a complaint with the Medical College's internal Equal Employment Opportunity Office ("EEO Office"), alleging that the letter of reprimand was in retaliation for Plaintiff's disagreement with his immediate supervisor, Dr. Richard Hessler, over work schedules.

On the morning of February 7, 2003, Dr. Peiper directed Dr. Hessler to deliver a letter of non-renewal to Plaintiff. At the direction of Peiper, Defendant David Toulson, an officer with the College Police, and Mark Lewis, the administrative department manager, accompanied Hessler to deliver the letter. When presented with the letter, however, Plaintiff refused to accept it, or to turn over his keys and identification badge to Hessler.

What happened next is highly disputed. Plaintiff alleges that Defendants Toulson, Morbit, Jones, and Archer, College Police public safety officers, assaulted him and placed him handcuffed to the floor and walls in a holding cell with a mask over his mouth despite Plaintiff having suffered an asthma attack during the incident.

Approximately an hour after being placed in the holding cell, emergency medical personnel transferred Plaintiff to the hospital emergency room for treatment for an asthma attack and a severed Achilles tendon sustained during the altercation. While at the emergency room, Peiper notified Plaintiff that he was terminated effective immediately because of the events of the day. Plaintiff alleges that Defendants made false statements to medical providers in order to have Plaintiff admitted for a mental evaluation.

Defendants' version of events differs greatly from Plaintiff's version. According to Defendants, Plaintiff aggressively resisted efforts by the officers to peacefully deliver the letter of non-renewal. Defendants further contend that Plaintiff became hostile and refused to obey the officers' direct request that he leave the premises. Defendants further contend that Plaintiff's injuries, as well as an injury suffered by Archer and a broken foot suffered by Toulson, resulted from Plaintiff's resistance.

An arrest warrant for Plaintiff was obtained based on Toulson's testimony regarding the incident. In the warrant, Plaintiff was charged with three counts of felony obstruction of an officer, felony interference with government property, battery, simple battery and failure to leave the Medical College campus when ordered to do so by College Police.

At the preliminary hearing on February 27, 2003, the charges against Plaintiff were reduced to three counts of felony obstruction of justice, misdemeanor battery, and criminal trespass. Plaintiff was tried and acquitted of all charges before a jury in November 2003.

On November 18, 2003, Plaintiff filed this lawsuit against Dr. Peiper, Officers Toulson, Morbit, Jones, and Archer, the Medical College and the Medical College Police Department alleging violations of his constitutional rights, federal employment statutes, and state common law. Plaintiff has expressly or impliedly abandoned many of the claims found in his complaint.[1] Therefore, although Defendants' summary

---

[1] In determining which claims remain, the Court began with the claims asserted in the parties' Consolidated Pretrial Order filed on March 15, 2007. See Local Rule 16.4 ("[T]he pretrial order shall supersede all prior pleadings, [and] shall control the trial of the case[.]") In the Consolidated Pretrial Order, Plaintiff asserts federal claims pursuant to 42 U.S.C. § 1983 and Title VII (Doc. # 49 at 6) and state law tort claims of simple battery, false imprisonment and intentional infliction of emotional distress (id. at 11). Thus, Plaintiff's state law slander and false arrest claims are deemed abandoned. In addition, Plaintiff voluntarily

5

judgment motion addresses the multiplicity of claims asserted in Plaintiff's complaint, the Court will only address those claims that remain outstanding. The claims remaining pending before the Court for consideration on Defendants' instant motion for summary judgment are: a Section 1983 claims for use of excessive force and false arrest in violation of the Fourth and Fourteenth Amendments; a retaliation claim in violation of Title VII; and a state law false imprisonment claim.

## DISCUSSION

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when no genuine issues remain and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). In so doing, all facts and reasonable inferences are to be construed in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

---

abandoned his state law battery and intentional infliction of emotional distress claims by his Notice of Abandonment of Specific Claims filed on February 9, 2005. (Doc. # 39.)

## II. SUBSTITUTION

As an initial matter, the parties agree that the defendants identified as the "Medical College of Georgia" and the "Medical College of Georgia Police Department" should be known as the "Board of Regents of the University System of Georgia d/b/a the Medical College of Georgia." (See Consolidated Pretrial Order, Doc. # 39 at 5.) Accordingly, the Court will direct the Clerk to substitute the "Board of Regents of the University System of Georgia d/b/a the Medical College of Georgia" ("Board of Regents") as a defendant in this action.

## III. SECTION 1983 CLAIMS

### A. Eleventh Amendment Immunity[2]

Defendants argue that the Eleventh Amendment bars Plaintiffs' § 1983 and state law claims[3] against the Board of

---

[2] On April 26, 2005, the Court sua sponte raised the issue of whether it had subject matter jurisdiction over the claims asserted against Defendants in their official capacity in light of the Eleventh Amendment, and invited the parties to submit briefs of their arguments on this issue. (Doc. # 40.)

[3] The parties do not dispute that Congress has explicitly overridden a State's immunity from suits filed pursuant to Title VII. See Cross v. Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995) ("It is undisputed that the Eleventh Amendment does not bar appellees' Title VII suit."). Therefore, Plaintiff's retaliation claim against the Board of Regents and the individual Defendants in their official capacity is not addressed in the Court's analysis.

Regents and the individual named Defendants in their official capacity. The Eleventh Amendment generally grants the States immunity from lawsuits in federal court. The Eleventh Amendment provides that States may not be sued by their own citizens or citizens of other States. U.S. Const. Amend. XI; Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 961-62, 148 L.Ed.2d 866 (2001) ("Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States.") The States' Eleventh Amendment immunity extends to agents and instrumentalities acting as an "arm of the state," and "applies even when a state is not named as a party of record, if for all practical purposes the action is against the state." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003), cert. denied, 540 U.S. 1107, 124 S.Ct. 1061, 157 L.Ed.2d 892 (2004); Schopler v. Bliss, 903 F.2d 1373, 1378 (11th Cir. 1990). Similarly, lawsuits against a state official in his or her official capacity are suits against the State when "the state is the real, substantial party in interest." Doe v. Moore, 410 F.3d 1337, 1349 (11th Cir.), cert. denied, 126 S.Ct. 624, 163 L.Ed.2d 506 (2005) (quoting

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 917, 79 L.Ed.2d 67 (1984)).[4]

Plaintiff contends that Defendants have not shown that the State of Georgia is the real party in interest.[5] Under Eleventh Amendment analysis, courts have consistently deemed the Board of Regents an arm of the state of Georgia. See Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) (holding Board of Regents of University System of Georgia waived its Eleventh Amendment immunity when it removed a case from state court to federal court); Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301 (2007) (Eleventh Amendment bars § 1983 claims against University of Georgia and the Board of

---

[4] A party may overcome Eleventh Amendment immunity if the State has waived its immunity or if Congress has validly abrogated the State's immunity. Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301 (11th Cir. 2007). Plaintiff, however, does not assert that either of these exceptions apply to the § 1983 and state law claims in the instant case.

[5] Whether a governmental entity is an "arm of the State" turns on its function and character as determined by state law. Factors that bear on this determination include the definition of "State" and "political subdivision," the state's degree of control over the entity, and the fiscal autonomy of the entity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); Fouche v. Jekyll Island-State Park Auth., 713 F.2d 1518, 1520 (11th Cir. 1983) (citing Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. 1981)). In light of the abundance of caselaw rejecting this argument, however, a lengthy "arm of the State" analysis is unnecessary.

Regents); Braswell v. Bd. of Regents of Univ. Sys. of Ga., 369 F.Supp.2d 1371, 1376 (N.D. Ga. 2005) ("the Board of Regents and [Defendants] acting in their official capacities as employees of the University, are state agents."); Fedorov v. Bd. of Regents for Univ. of Ga., 194 F.Supp.2d 1378, 1387 (S.D. Ga. 2002) ("The Board of Regents is an agency of the State of Georgia."). As such, the Board of Regents and the individual Defendants in their official capacity are entitled to Eleventh Amendment immunity as to Plaintiff's § 1983 and state law claims. This does not mean that Plaintiff has no avenue for recovery, but only that these claims must be brought in state court. See Manders, 338 F.3d at 1308.

## B. Defendants in Their Individual Capacity

### 1. Dr. Peiper

Defendants argue that Plaintiff's § 1983 claim against Dr. Peiper in his individual capacity must fail because he was not a party to any of the factual allegations related to this claim. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). In order

10

to impose supervisory liability under § 1983, the plaintiff must show that the supervisor personally participated in the alleged unconstitutional conduct or that a causal connection existed between the actions of a supervising official and the alleged constitutional deprivation. Cottone, 326 F.3d at 1360; Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). A causal connection can be established either by demonstrating a history of widespread abuse whereby the responsible supervisor is put on notice, or by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003) (citations omitted). However, "[t]he standard by which a supervisor is held liable in h[is] individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (quoting Braddy, 133 F.3d at 802).

Plaintiff bases Peiper's supervisory liability on Peiper's decision not to renew Plaintiff's contract, the manner in which notice of the non-renewal was effected, and Peiper's alleged motivation for the decision. Plaintiff does not allege that Peiper was the supervisor responsible for the conduct of the College Police officers. Plaintiff does not

allege that Peiper personally participated in any unconstitutional conduct. Nor does he allege any causal connection between the actions of Peiper and any constitutional deprivation. Thus, Plaintiff has failed to show any causal connection between Peiper's conduct and Toulson, Morbit, Jones, and Archer's alleged wrongful acts as necessary to establish supervisory liability.

### 2. Qualified Immunity

Defendants argue that Toulson, Morbit, Jones, and Archer in their individual capacity are entitled to qualified immunity on Plaintiff's § 1983 and state law claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Because there is no dispute that Tolson, Morbit, Jones, and Archer were performing their discretionary functions as public safety officers, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.), reh'g & reh'g en banc denied, 37 Fed. Appx. 503 (2002).

When an individual defendant moves for summary judgment based on qualified immunity, the court "must determine whether there is a genuine issue of material fact as to whether the defendant committed conduct that violated clearly established law." Koch v. Rugg, 221 F.3d 1283, 1295 (11th Cir. 2000) (citing Johnson v. Clifton, 74 F.3d 1087, 1091 (11th Cir. 1996)). In Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), the Supreme Court set out a two step analysis to determine whether an officer is eligible for qualified immunity. The first step is to determine whether the facts "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right[.]" Id. If the conduct did not violate a constitutional right, the inquiry ends there. If the conduct violated a constitutional right, a court must move on to the second step and determine "whether the right was clearly established." Id. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted). "[O]fficials can still be on notice that their conduct violates established law even in

13

novel factual circumstances . . . . Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Id. at 741, 122 S.Ct. at 2516.

### a. Excessive Force

In the context of a claim for unreasonable force, it is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006); Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1332 (11th Cir. 2006); Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998); Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Thus, the difficult question is what constitutes excessive force. In determining whether the force used is reasonable, the Court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Thornton, 132 F.3d at 1400 (quoting Graham, 490 U.S. at 396, 109 S.Ct. at 1872). "An officer will be entitled to qualified immunity

14

if his actions were objectively reasonable, that is, if an objectively reasonable officer in the same situation could have believed that the force used was not excessive." Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (quoting Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Viewing the facts in the light most favorable to Plaintiff, Defendants Toulson, Morbit, Jones, and Archer are not entitled to qualified immunity. Plaintiff was not suspected of having committed a serious crime, did not pose an immediate threat to anyone, and did not actively resist arrest. Despite this, again viewing the facts in Plaintiff's favor, the officers used force in arresting Plaintiff. Plaintiff was wrestled to the ground by five officers who, even after Plaintiff was handcuffed and immobile, continued to apply pressure point pain techniques. The Court cannot say that an "objectively reasonable officer in the same situation could have believed that the force used was not excessive." See Kesinger, 381 F.3d at 1247.

### b. Fourth Amendment False Arrest

Defendants further argue that Plaintiff's § 1983 false arrest claim against Defendants Toulson, Morbit, Jones, and Archer in their individual capacity must fail because the

15

officers had probable cause to detain and arrest Plaintiff. A warrantless arrest without probable cause violates the Constitution and provides a basis for a § 1983 claim. Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990); Kingsland v. City of Miami, 382 F.3d 1220, 1226 (2004), reh'g & reh'g en banc denied, 124 Fed. Appx. 644 (11th Cir. 2004). The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest. Kingsland, 382 at 1226. Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir.), cert. denied, 525 U.S. 823, 119 S.Ct. 67, 142 L.Ed.2d 52 (1998). "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Id. (quoting Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995)).

Defendants argue that the fact that they were able to obtain an arrest warrant is evidence that Plaintiff's arrest was supported by probable cause. Plaintiff, however, alleges that the warrant was based on Toulson's false statements to the magistrate judge. Clearly, "falsifying facts to establish

16

probable cause is patently unconstitutional. _Kingsland_, 382
F.3d at 1232 (citing _Riley v. City of Montgomery_, 104 F.3d
1247, 1253 (11th Cir. 1997)); see also _Kelly v. Curtis_, 21
F.3d 1544, 1554 (11th Cir. 1994) ("The Supreme Court has also
held that the Constitution prohibits an officer from making
perjurious or recklessly false statements in support of a
warrant.") The Court cannot conclude as a matter of law that
probable cause existed to arrest Plaintiff. Plaintiff's
allegations, if true, establish a violation of Plaintiff's
Fourth Amendment rights for purposes of both qualified
immunity and summary judgment determinations.

## IV.   TITLE VII CLAIMS

Title VII prevents an employer from retaliating against
an employee who "has made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or
hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

### A.   Dr. Peiper in His Individual Capacity

Defendants argue that Plaintiff's Title VII claim against
Dr. Peiper in his individual capacity should be dismissed.
The Court has previously held that "'[t]he relief granted
under Title VII is against the employer, not [against]
individual employees whose actions would constitute a

violation of the Act.'" Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) (quoting Hinson v. Clinch County Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000)); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (also holding that "[i]ndividual capacity suits under Title VII are . . . inappropriate"). Thus, insofar as Plaintiff's Title VII is asserted against Peiper in his individual capacity, Peiper is entitled to summary judgment as a matter of law.

## B.    Board of Regents and Dr. Peiper in His Official Capacity

Defendants argue that Plaintiff's retaliation claims against the Board of Regents and Dr. Peiper in his official capacity fail because there is no evidence of retaliation against Plaintiff for engaging in a protected activity. To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) []he participated in an activity protected by Title VII; (2) []he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

To establish a causal connection between participation in a protected activity and adverse employment action, "a plaintiff need only show that the protected activity and the

18

adverse action were not wholly unrelated." <u>Brungart v.</u>
<u>BellSouth Telecomms., Inc.</u>, 231 F.3d 791, 799 (11th Cir.
2000), <u>cert.</u> <u>denied</u>, 532 U.S. 1037, 121 S.Ct. 1998, 149
L.Ed.2d 1001 (2001) (quotations omitted). To make this
showing, a plaintiff must generally establish "that the
decision maker was aware of the protected conduct at the time
of the adverse employment action." <u>Id.</u> Close temporal
proximity between protected conduct and an adverse employment
action is generally "sufficient circumstantial evidence to
create a genuine issue of material fact of a causal
connection." <u>Hurlbert v. St. Mary's Health Care System, Inc.</u>,
439 F.3d 1286, 1298 (11th Cir. 2006) (quoting <u>Brungart</u>, 231
F.3d at 799).

Plaintiff filed a charge with the EEO Office against his
supervisor on January 30, 2003. Plaintiff received his non-
renewal letter on February 7, 2003. Prior to filing the
charge, Plaintiff did not receive any notice that his
employment was in jeopardy, he was advised that the Medical
College was supporting his effort to obtain a permanent visa,
and he received a bonus for his employment efforts.
Construing the evidence in the light most favorable to
Plaintiff as required under summary judgment, a reasonable
jury could find that the decision not to renew Plaintiff's

19

contract was in retaliation for his having filed a charge with the EEO Office.

## V. STATE LAW FALSE IMPRISONMENT CLAIM

Defendants argue that Plaintiff's false imprisonment claim must fail on the merits because his imprisonment was predicated on procedurally valid process. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. The essential elements in an action to recover damages for false imprisonment under Georgia law "are the detention and the unlawfulness thereof." Bunyon v. Burke County, 285 F.Supp.2d 1310, 1329 (S.D. Ga. 2003) (quoting Miller v. Grand Union Co., 250 Ga.App. 751, 552 S.E.2d 491, 494 (2001)). When, however, a detention is predicated upon procedurally valid process, false imprisonment is not an available remedy, regardless of the motives upon which the process was secured. Jenkins v. Blue Moon Cycle, Inc., 277 Ga.App. 733, 736, 627 S.E.2d 440, 444 (2006) (quoting Joseph v. Home Depot, 246 Ga.App. 868, 872(3), 542 S.E.2d 618 (2000)).

At the time the alleged assault occurred, Defendants had not secured an arrest warrant. In fact, Plaintiff alleges that he was told by Defendant Jones that he was not under

20

arrest and had agreed to leave just prior to entering the hall where he was assaulted by the officers. The arrest warrant was obtained after the incident and based upon Plaintiff's alleged resistance when he was initially taken into custody. Construing the evidence in the light most favorable to Plaintiff as required under the summary judgment standard, genuine issues exist as to whether Defendants Toulson, Morbit, Jones, and Archer, the only remaining defendants in Plaintiff's state law claims, had probable cause when they initially detained Plaintiff prior to obtaining the arrest warrant.

## CONCLUSION

The Court has read and considered the position of all parties. For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 23) is **GRANTED IN PART and DENIED IN PART.**

Defendants' motion for summary judgment on Plaintiff's § 1983 claims against the Board of Regents, the individually named Defendants in their official capacity, and Dr. Peiper in his individual capacity is **GRANTED.**

Defendants's motion for summary judgment on Plaintiff's § 1983 claims against Defendants Toulson, Morbit, Jones, and Archer in their individual capacity, Plaintiff's Title VII

retaliation claim against the Board of Regents and Dr. Peiper in his official capacity, and Plaintiff's state law false imprisonment claim against Defendants Toulson, Morbit, Jones, and Archer in their individual capacity is **DENIED**.

The Clerk is directed to substitute the "Board of Regents of the University System of Georgia d/b/a the Medical College of Georgia" for the "Medical College of Georgia" and the "Medical College of Georgia Police Department" as a defendant in this action.

**ORDER ENTERED** at Augusta, Georgia, this ___ day of March, 2007.

_____
HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE